IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

NO. 5:12-CT-3080-FL

| JAMARA WASHINGTON, | ) | |
|---|---|---|
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | ORDER |
| | ) | |
| DAVID DANIELS, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

The matter is before the court on defendant's motion to dismiss (DE 26), which the court has construed with notice to plaintiff as a motion for summary judgment. The issues raised were fully briefed and are ripe for adjudication. For the following reasons, the court grants defendant's motion.

### STATEMENT OF THE CASE

On April 6, 2012, plaintiff, a state inmate, filed this action *pro se* pursuant to 42 U.S.C. § 1983, against defendant David Daniels ("Daniels"), who is a sergeant with the New Bern Police Department ("NBPD"), and previously-named defendant Assistant District Attorney Geoffrey G. Adair ("Adair").[1] On October 16, 2012, the court entered an order directing plaintiff to particularize his complaint. As part of its order, the court informed plaintiff that his amended pleading would constitute the complaint in its entirety.

---

[1] Previously-named defendant Adair was dismissed by order entered April 3, 2013, as described further herein. The court constructively amends the caption of this order to reflect this dismissal.

Plaintiff subsequently complied with the court's order and filed a particularized complaint, alleging that defendants Adair and Daniels arrested him without probable cause in violation of the Fourth Amendment to the United States Constitution. Plaintiff appended several attachments to his amended complaint including a notice of dismissal, indictments, orders finding probable cause justifying continued detention, criminal judgments, criminal verdict forms, NBPD notes, motions filed in plaintiff's criminal action, and North Carolina State offender information.

On April 3, 2013, the court conducted a frivolity review of plaintiff's particularized pleading pursuant to 18 U.S.C. § 1915(e)(2)(B). The court dismissed plaintiff's action against Adair pursuant to the doctrine of prosecutorial immunity, and allowed plaintiff to proceed with his action against defendant Daniels.

On July 11, 2013, plaintiff filed a motion for leave to amend his complaint. The court granted plaintiff's motion, and plaintiff filed his amended complaint on August 22, 2013. Plaintiff's amended complaint included new claims for false arrest and malicious prosecution. On September 10, 2013, plaintiff filed three compact discs. One disc contained a portion of the transcript from plaintiff's criminal trial. (Pl.'s Ex. K.) The remaining two discs contained surveillance videos of the incidents occurring on November 9 and 14, 2009, as described further below.

Defendant Daniels subsequently filed a motion to dismiss, which was fully briefed. On July 17, 2014, the court issued an order notifying the parties of its intent to review Daniels' motion as a motion for summary judgment and directed the Clerk of Court to issue a letter pursuant to Federal Rule of Civil Procedure 56. Plaintiff then filed a response to the newly construed motion for summary judgment, and again submitted copies of the three compact discs containing plaintiff's criminal trial transcript and the videos of the November 2009 incidents.

2

**STATEMENT OF THE FACTS**

The undisputed facts may be summarized as follows.[2] This action arises out of plaintiff's arrest on November 14, 2009, following his alleged sale of cocaine to confidential informant Carlos Rodriquez ("CI") on November 9 and 14, 2009.[3] The first controlled cocaine purchase was set up by defendant Daniels and NBPD officers Houston, Brown, Tillman, and Raynor who met with the CI on November 9, 2009, to arrange the transaction. (Am. Compl. (DE 8), Attach. p. 10.) The target of the controlled purchase was Angelo Whitehurst ("Whitehurst"). (Id.) The NBPD provided the CI with recorded funds for making the purchase. (Id.) The NBPD also arranged for a cab to transport the CI to Whitehurst's location and to then take the CI and Whitehurst to Pembroke Avenue where the purchase was to take place. (Id.)

When the cab arrived, it took the CI to pick up Whitehurst and then took the CI and Whitehurst to the Pembroke Avenue location where the drug transaction allegedly was completed. (Id.) After the transaction was completed, the CI dropped Whitehurst off at a Fresh Foods location. (Id., Attach. p. 11.) The CI then met with the NBPD officers and turned over the purchased cocaine. (Id.)

The activities at Pembroke Avenue were videotape recorded. (Pl.'s Ex. J(1).) Defendant Daniels viewed the videotape and observed a second suspect who sold the CI cocaine. (Am. Compl. (DE 8), Attach. p. 11; Pl.'s Ex. J(1) T: 34:33-36:44.) Neither the CI or defendant Daniels knew the identity of the second suspect. To obtain the second suspect's identity, NBPD officers showed a

---

[2] Plaintiff states that the parties agree on the material facts as set forth in plaintiff's exhibits A-K. ((DE 37) p. 4.)

[3] In exchange for the CI's services, Daniels agreed to return one thousand three hundred three dollars ($1,303.00) that previously was seized from the CI pursuant to an arrest. (TR. pp. 53-55.)

3

photographic or video image to probation officer Karen Renfrow ("Renfrow"), who identified the second suspect as plaintiff.[4] (Am. Compl. (DE 8), Attach. p. 16.)

Using the identification from Renfrow, NBPD officers set up a second controlled cocaine purchase for November 14, 2011, and again utilized the CI. (Id., Attach. p. 14.) To effectuate the purchase, the CI contacted Whitehurst, who in turn set up a meeting between plaintiff and the CI. (Id.) NBPD officers followed the CI and Whitehurst to the Pembroke Avenue area. (Id.) The officers parked nearby and listened to the audio recording of the transaction. (Id.)

At some point, defendant Daniels radioed participating NBPD officers Houston, Joll, Brown, Phalen, and Detwiler that the transaction was complete. (Id.) Shortly thereafter, officers Phalen and Detwiler located and stopped the vehicle in which the CI and Whitehurst were traveling. (Id., Attach. p. 16).) The officers then arrested Whitehurst, and the CI returned the half ounce of cocaine that allegedly was purchased from plaintiff. (Id., Attach. p. 16; Tr. p. 87.) Although the second controlled drug purchase also was recorded through surveillance video, the alleged cocaine dealer was not visible on the video. (Pl's Ex. J(2).)

Approximately five to ten minutes after the CI's vehicle was stopped, defendant Daniels returned to the scene of the alleged drug transaction and observed plaintiff sitting in the back of a patrol car outside of 2006 Pearson Avenue. (Tr. pp. 36-37.) NBPD officers then transported plaintiff to the police station. (Id. p. 38.) Plaintiff subsequently was taken to the magistrate office. (Am. Compl. (DE 8), p. 14.)

At the magistrate's office, the magistrate judge determined that plaintiff was arrested without a warrant and that continued detention was justified because probable cause existed to believe

---

[4] Renfrow served as plaintiff's probation officer. (Id., Attach. p. 16.)

plaintiff committed two counts of possession with intent to sell and deliver cocaine, two counts of conspiracy to commit the felony of selling cocaine, and two counts of the sale of cocaine. (Id., Attach, pp. 3, 5.) On February 15, 2010, a grand jury returned an indictment charging plaintiff with two counts of possession with the intent to sell and deliver cocaine and two counts of conspiracy to commit the felony of selling cocaine. (Id., Attach. pp. 2, 4.)

After leaving the magistrate's office, plaintiff was taken to the jail. As jail officials were processing plaintiff, plaintiff was asked to remove his shoes and NBPD officers recovered from plaintiff six hundred fifty dollars ($650.00) of photocopied money that was determined to have originated from the NBPD.[5] (Tr. p. 64, 171, 188-189.)

On February 29, 2012, following a jury trial, a jury found plaintiff not guilty of the November 14, 2009, charges. (Pl.'s Am. Compl. (DE 8), Attach. p. 7.) The remaining charges subsequently were dropped on June 27, 2012. (Id., Attach. p.1.)

## DISCUSSION

A.  Standard of Review

Summary judgment is appropriate when there exists no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); Anderson v. Liberty Lobby, 477 U.S. 242, 247 (1986). The party seeking summary judgment bears the burden of initially coming forward and demonstrating an absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Once the moving party has met its burden, the nonmoving party then must affirmatively demonstrate that there exists a genuine issue of material fact requiring trial. Matsushita Elec. Industrial Co. Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587

---

[5] The serial numbers from the money used in the controlled purchase were recorded prior to being given to the CI. (TR. pp. 138-139.)

(1986). There is no issue for trial unless there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party. Anderson, 477 U.S. at 250.

B.   Analysis

    1.   Fourth Amendment Claim

Plaintiff contends that Daniels did not have probable cause to arrest him for the drug offenses arising out of the events of November 9, 2009, and November 14, 2009. Seizure of an individual without probable cause is unreasonable and violates the Fourth Amendment to the United States Constitution. Miller v. Prince George's County, 475 F.3d 621, 627 (4th Cir. 2007). "For probable cause to exist, there need only be enough evidence to warrant the belief of a reasonable officer that an offense has been or is being committed; evidence sufficient to convict is not required." Brown v. Gilmore, 278 F.3d 362, 367 (4th Cir. 2002). To determine the existence of probable cause, courts must examine "the totality of the circumstances known to the officer" leading up to the time of arrest. Id. The court must "then decide whether these historical facts, viewed from the standpoint of an objectively reasonable police officer, amount to probable cause." Maryland v. Pringle, 540 U.S. 366, 371 (2003) (citations omitted). Accordingly, "an arresting officer's state of mind (except for the facts that he knows) is irrelevant to the existence of probable cause." Devenpeck v. Alford, 543 U.S. 146, 153 (2004).

The undisputed facts are sufficient to establish that a reasonable law enforcement officer would have believed that plaintiff was involved in drug activity on November 9, 2009, and November 14, 2009. Namely, according to Daniels' case notes, on November 9, 2009, plaintiff was observed on video selling cocaine to a confidential informant. (Am. Compl. (DE 8), Attach. pp. 11-12; Ex. J(1), T: 34:33-36:44.) Although neither the CI or Daniels knew plaintiff's identity, Daniels

6

showed the November 9, 2009, videotape to probation officer Karen Renfrow who identified plaintiff as the person selling drugs to the CI.[6] (Am. Compl. (DE 8), Attach. p. 15.) Daniels then arranged a second transaction on November 14, 2009, and the CI reported to Daniels that plaintiff again sold the CI cocaine on that date. (Id. pp. 13-14.) Finally, Daniels testified at plaintiff's trial that, subsequent to plaintiff's arrest, plaintiff possessed recorded money that Daniels provided to the CI to purchase cocaine from plaintiff. (Pl.'s Ex. K, pp. 63-64, 171.) Based upon the foregoing, the undisputed facts are sufficient for a reasonable officer to believe that plaintiff had committed the charged offenses.[7]

Plaintiff's contention that the CI lacked credibility does not alter the court's conclusion. As stated, Daniels obtained assistance in discovering plaintiff's identity, as the person selling the CI drugs by consulting with plaintiff's probation officer concerning the November 9, 2009, videotape. Accordingly, even if Daniels had reason to doubt the information provided by the CI, the probation officer's corroboration of the CI's information was sufficient to establish probable cause. See Illinois v. Gates, 462 U.S. 213, 243-44 (1983) (stating that once corroborated, even an otherwise unreliable tip may establish the higher, probable cause standard); United States v. Clyburn, 24 F.3d

---

[6] Plaintiff does not dispute the fact that his probation officer identified him as the person selling drugs to plaintiff after viewing the videotape of the November 9, 2009, transaction.

[7] Plaintiff's claim further is subject to dismissal on alternative grounds. Specifically, "an indictment, 'fair upon its face,' returned by a 'properly constituted grand jury,' conclusively determines the existence of probable cause." Gerstein v. Pugh, 420 U.S. 103, 117 n.19 (1975) (internal quotations omitted); Durham v. Horner, 690 F.3d 183, 189 (4th Cir. 2012). Nevertheless, "a grand jury's decision to indict will [not] shield a police officer who deliberately supplied misleading information that influenced a decision." Id. (citations omitted). Here, although plaintiff contends that Daniels presented false testimony at trial, plaintiff does not allege that Daniels presented false evidence to the grand jury. Thus, the grand jury indictments in this case conclusively establish Daniels had probable cause to arrest plaintiff. Cf. Brooks v. City of Winston-Salem, N.C., 85 F.3d 178, 184 & n. 7 (4th Cir. 1996) (recognizing that, where untainted facts support officer's assessment of probable cause, seizure "rendered reasonable by virtue of a probable cause determination by a neutral and detached magistrate ... is reasonable" and "break[s] the causal chain between the application for the warrant and the improvident arrest").

613, 618 (4th Cir. 1994) ("Although the informant's reliability initially was questionable due to her incarceration, [the officer who submitted the warrant application] verified the informant's allegations by setting up and monitoring controlled purchases of cocaine."); see also, e.g., United States v. Allen, 960 F.2d 1055, 1057 (D.C. Cir.1992) (per curiam) ("We have ... upheld ... a search warrant based on a reliable informant's tip about drug activity at a residence corroborated by a single controlled buy....").

To the extent plaintiff claims Daniels fabricated evidence, such claim does not alter this court's conclusion. Plaintiff provides no factual or evidentiary support for these conclusory allegations. Accordingly, plaintiff's claims are insufficient to defeat the court's finding of probable cause. See White v. White, 886 F.2d 721, 723 (4th Cir.1989) (stating minimum level of factual support required to state a constitutional claim).

Finally, plaintiff's contention that the CI was paid for his services with drug money that previously was confiscated from him also does not alter the court's conclusion. It is well-settled that the government may reimburse witness expenses and even pay fees during investigations and bonuses that are related to convictions. United States v. Levenite, 277 F.3d 454, 462 (4th Cir. 2002) (holding no violation of 18 U.S.C.§ 201 where government paid fees and expenses to a confidential informant of $3,300 per month during an investigation and offered a bonus of $100,000 if certain convictions were obtained). Moreover, as stated, the information provided by the CI was corroborated by outside sources. Thus, plaintiff's allegations that the CI was paid for his service is insufficient to alter the court's probable cause analysis.

8

2. Malicious Prosecution/False Arrest

To the extent plaintiff asserts that Daniels falsely arrested him in violation of the Fourth Amendment, his claim is without merit. To establish a Fourth Amendment false arrest or malicious prosecution claim, the plaintiff must establish that probable cause did not exist for his arrest. Brooks, 85 F.3d at 183. As stated, Daniels had probable cause to arrest plaintiff. Thus, plaintiff fails to state a claim for false arrest or malicious prosecution, and these claims are DISMISSED.

3. Perjury

Plaintiff asserts that Daniels provided perjured testimony at plaintiff's criminal trial. However, police officers, such as Daniels, are immune from an action arising under § 1983 for alleged perjury. Briscoe v. LaHue, 460 U.S. 325, 342-46 (1983); Smith v. McCarthy, 349 F. App'x 851, 858 n.10 (4th Cir. 2009). Thus, Daniels' motion for summary judgment is GRANTED as to this claim.[8]

4. Eighth Amendment Claim

To the extent plaintiff claims violations of the Eighth Amendment to the United States Constitution, he is not entitled to relief. Eighth Amendment protections begin after a person is convicted of a crime. See Rish v. Johnson, 131 F.3d 1092, 1096 (4th Cir.1997). Because plaintiff was not convicted of a crime related to the facts in this case, he is not entitled to relief pursuant to the Eighth Amendment.

---

[8] To the extent plaintiff asserts that the CI perjured himself at trial, such claim is immaterial to the probable cause analysis because the probable cause analysis focuses on whether Daniels reasonably believed the plaintiff committed a crime at the time of plaintiff's arrest and not at trial. See Brown, 278 F.3d at 367 ("Probable cause is determined from the totality of the circumstances known to the officer at the time of the arrest.").

## CONCLUSION

Based on the foregoing, Daniels' motion for summary judgment (DE 26) is GRANTED. The Clerk of Court is DIRECTED to close this case.

SO ORDERED, this the 22nd day of September, 2014.

_____
LOUISE W. FLANAGAN
United States District Judge